CAVIE RICHARDSON, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Where the defendant's railroad is carried across a public highway in such manner and place that those traveling the highway can neither see nor distinctly hear approaching trains until too late to avoid collision with them, the company is liable for such collision in the absence of negli-gence of those injured.

Compliance with the statute as to sounding the whistle and ringing the

*NOTE.—The right of the directors to increase the capital stock was not passed upon by the court. (REP.)

bell is not the whole duty of the company, and will not excuse them in such a case.

(Argued May 26th; decided September 5th, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the seventh judicial district, affirming a judgment entered upon the report of Hon. Addison Gardiner, referee, in favor of the plaintiff.

The defendant's railroad passing through the town of Pittsfield, in the county of Monroe, crosses a public highway. At the point of crossing, the railroad is raised upon an embankment about ten feet above the natural level of the surrounding ground, over which embankment the highway is carried. The track approaches the highway from the south through an excavation, deep enough to cut off all view of approaching trains, and extending up to a point within a few rods of crossing. The defendant had erected a watch-house a few feet south of the highway, and at one time maintained a watchman at the crossing; but at the time of the accident there was none. The watch-house was so situated that it partially obstructed the view of the track. At a short distance from the crossing there was a waste-weir for the discharge of surplus water from the canal. The water had a fall of about twenty-five feet, which had a tendency to confuse all other sounds. The driver of the plaintiff's wagon, as he approached the crossing, stopped his team, rose in the wagon, and looked carefully for an approaching train; he exercised all reasonable care to avoid the collision. Attempting to continue his course across the track, he was struck by a train coming from the south at full speed. One of the horses was killed, the wagon and harness substantially destroyed, and the corn meal with which the wagon was loaded scattered on the ground. The referee found as a fact that the employes of the road, in charge of the train, were not in fault. He also found, that the defendant did not take those reasonable precautions, to secure travelers upon the highway

against the dangers to which they were exposed in passing the crossing, which were proper and necessary.

*Geo. G. Munger*, for appellant, relied on *Grippin* v. *N. Y. Cent. R. R.*, MS., Ct. of Appeals, Nov., 1870); and *Beisiegel* v. *N. Y. Central R. R. Co.* (40 N. Y., 9).

*W. C. Rowley*, for respondent, cited *Bradley* v. *B. and M. R. R.* (2 Cush., 540); *Kinney* v. *Crocker* (18 Wis., 74). The care to guard against the danger to others must be in proportion to the danger. (*Kelsey* v. *Barney*, 12 N. Y., 429; *Johnson* v. *H. R. R. Co.*, 6 Duer, 633; *Bowen* v. *N. Y. C. R. R. Co.*, 11 N. Y., 408; *Brown* v. *N. Y. C. R. R. Co.*, 34 N. Y., 404.) See, also, *Cook* v. *N. Y. C. R. R. Co.* (3 Keyes, 476, 479).

PECKHAM, J. The statute allows railroads to cross public highways, but requires the railway company " to restore the highway thus intersected to its former state, or to such state as not unnecessarily to have impaired its usefulness." (3 N. Y. S. at Large, Edm. ed., 628, § 28, sub. 5.) Another provision authorizes such companies, in crossing a highway, to go under or above it, as may be expedient. (Id., 626, § 24.) Did the legislature intend by these provisions to allow a railway company to shut up a highway and deprive the people of its entire use? That would seem to be the effect of reversing this judgment, as a road is substantially closed to the public, which cannot be traveled by the cautious without *imminent* peril to their lives.

The injury in this case occurred to the plaintiff, notwithstanding the exercise of every care by him, as such is the finding, and it is well sustained by the proof.

When he arrived at a proper distance from the crossing, for that purpose, he stopped his horses, rose up in his wagon, looked and listened, and neither saw nor heard aught of the train. Then proceeding again carefully, he sustained the injury by a train rushing suddenly against his horses and

wagon, etc., which it was impossible for him to avoid after he saw it.

The deep cutting in which the rail-track ran, the watch-house erected, but not used by the defendant, prevented the train from being seen until the traveler approached within a few feet of the crossing. The watch-house obstructed the view a distance further off. The sound of a fall of water at the crossing, besides the peculiarity of the road, prevented the noise of the train, whistle or bell from being heard; and the cars were running at the rate of about thirty-six miles an hour.

The highway was not closed in fact or in law. The public had a right to use it for travel. The plaintiff, at the time of the injury, was exercising a clear right upon that highway.

The grade of the highway was necessarily considerably changed by reason of this crossing.

All peril of this kind could have been avoided by the railway, by going under or above the surface of the highway at the crossing. If this danger could be avoided in no other way, then it would seem to follow that the " usefulness " of the highway was " unnecessarily impaired " by the railway's omission to do either. It had failed in its statute obligation. It was not the duty of the highway, but of the railroad, to give this protection from the peril caused by the railroad.

Again, in laying down rules of general application, courts find it frequently necessary to make exceptions, to prevent injustice.

When the reason of the rule fails, the law usually discharges the rule. For the protection of the traveling public, the statute requires railroads to ring their bells or sound their whistles a certain distance from the crossing over a highway. The legislature required this, in order to give notice to the traveler of the approaching peril, and to enable him to avoid it. Almost universally, this is a sufficient protection. But, in the case at bar, it gave no notice whatever, and gave no protection. This the defendant well knew, and could not avoid knowing from the surroundings. It also knew that the

legislature intended that the traveling public at such places should have notice of the approach of a train in some manner. In this case, as it failed, knowingly failed, to give any notice, it was guilty of a neglect, for which it was justly held liable. Upon that ground it is, in my judgment, liable upon the soundest principle.

The legislature has never enacted that a railroad shall not be liable for any injury at a crossing where it rings its bell or sounds its whistle. No legislative impunity is given to the railroads for damages they may wrongfully cause. But the statute declares that they shall do those specified things, and that they shall be liable for any damages caused by their omission. As a general rule, undoubtedly, they are exempt from liability to the outside public when, in good faith, those provisions are substantially complied with. But there may be cases where the purpose of these requirements is not and cannot be attained by their technical fulfillment. Such is the case at bar—plain and palpable; easily understood, as the act of the company in building the watch-house and in keeping a watchman there for some time, shows the defendant understood it.

This principle has been substantially held by this court in the last decision in *Beisiegel* v. *This Defendant.*

The defendant again, by its own act, caused this injury, in its erection of the watch-house, now not used, but preventing the traveler from seeing the, train, which he otherwise might.

. That it obstructed this traveler's view, is found by the referee. That it thus caused the injury, may be fairly inferred, as nothing could be seen as he approached the track " owing to the formation of the ground and the situation of the watch-house."

There was a map at the trial in evidence and none is produced here. Presumptions are in favor of affirming a judgment. Error is not presumed. If there were doubts on this point, in the absence of the map, the presumption is against error.

A building thus erected by a railroad, which prevented the public from seeing a train until too near for safety, has been held by this court a good ground for recovery. (*Mackay* v. *N. Y. Cen. R. R. Co.*, 35 N. Y., 75.)   It is so in this case.

GROVER, J., was for affirmance, on the ground that the rate of speed of the cars was improper, at that point.

FOLGER and ANDREWS, JJ., concur, on the ground that the defendant, by erecting the watch-house, had obstructed the view.

RAPALLO, J., concurs, on the ground that, the road being so constructed that the view was obstructed, defendant was bound to take proper measures, on its own premises, to protect travelers on the highway.