[No. 8,482.—In Bank.]

December 12, 1882.

# H. F. NEHRBAS *v.* THE CENTRAL PACIFIC RAILROAD COMPANY.

WHEN QUESTIONS OF NEGLIGENCE TO BE LEFT TO JURY.—Action by the father to recover damages for loss of five children, ranging from five to sixteen years of age, killed in a collision with a train belonging to defendant. The children killed were returning home from a May-day picnic, in a light wagon drawn by one gentle horse. The oldest—a girl of sixteen—was driving. She was acquainted with the highway over which she was passing and with the point at which it was crossed by the railroad track. Several persons in vehicles preceded her on the highway, and had crossed the railroad, the nearest one being some four hundred feet in advance; and she was followed by a boy thirteen years old, at a considerable distance in the rear. On the railroad, about three hundred and thirty-five feet from the point of crossing, was a covered bridge. On either side of the railroad, between the bridge and its intersection with the highway, were a number of eucalyptus trees planted by the defendant, and which had attained such size, as, according to some of the testimony in the case, prevented—in connection with some of the neighboring orchards—an approaching train from being seen by those traveling the highway, until the traveler should reach a point very close to the railroad track. There was also evidence going to show that at the time of the accident the train was slightly behind time, and was running at the rate of from thirty-three to thirty-five miles per hour, whereas the rate at which the trains usually ran at that point was from twenty-five to thirty miles an hour. Further, there was some evidence tending to show that the bell was not rung nor the whistle blown.

*Held:* 1. This evidence, especially that relating to the increased speed, under the circumstances appearing, tended to show negligence on the part of the defendant, and it was for the jury to pass upon the effect of this testimony. 2. The evidence was sufficient to justify the verdict of the jury against the defendant on the question of the defendant's negligence.

ID.—CONTRIBUTORY NEGLIGENCE.—If it clearly appears from the undisputed facts, judged of in the light of that common knowledge and experience of which Courts are bound to take notice, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure and danger, the question of negligence is one of law, to be decided by the Court. In all other cases the question must be submitted to the jury under proper instructions.

*Held:* In the present case the question of contributory negligence on the part of the deceased children was properly submitted to the jury, and there exists no valid reason for disturbing the finding of the jury on this point against the defendant.

RULE OF DAMAGES.—In this action under the law of this state the jury was not limited in assessing the plaintiff's damages to his actual pecuniary injury sustained by him by reason of the loss of services of his children.

APPEAL by defendant from the judgment of the Superior Court of the County of Alameda.   GREENE, J.

Action for damages caused through the negligence of the defendant.   Upon the conclusion of the plaintiff's testimony in the Court below the defendant moved for a nonsuit, which was denied.   The defendant offered no testimony.   The jury returned a verdict for the plaintiff in the sum of ten thousand eight hundred dollars.   The defendant, without moving for a new trial in the Court below, prepared a bill of exceptions to be used on appeal.   The facts are stated in the opinion of the Court.   After the decision in bank a petition for rehearing was presented and denied.

*Henry Vrooman* and *W. H. L. Barnes*, for Appellant.

The damages were excessive and contrary to law.   (Sedgwick on Measure of Damages, vol. ii., p. 537.)   The author says:  " Where there is a prospective pecuniary loss, resulting from the death, damages may be recovered in compensation for such loss.   It may be difficult, from the nature of the case, to lay down more than a general rule to govern the jury in their award of prospective damages.   There should be, at least, a reasonable expectation of pecuniary benefit from the life of the deceased to entitle the plaintiff to recover.

" Definite instructions should be given to the jury as to the true measure of damages under the statute, although much must be left, it is said, to their sound discretion.   The rule on the proper measure of damages in this class of cases is nowhere better stated than by Sharswood, J., in *Penn. R. R. Co.* v. *Butler,* 57 Pa. St. 335, where the learned Judge says:  'After an attentive examination and review of all the cases which have heretofore been decided, we are of opinion that the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered (in this instance the children of the deceased), without any *solatium* for distress of mind, and that loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children,

taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditure.'

"As to the future services of minors, damages under this statute may also be recovered for the pecuniary loss, present or prospective, resulting from the death of minors. But it should be made to appear to the jury that there is, at least, a reasonable expectation that the services of the child will be of pecuniary value to the plaintiff."

In *Oldfield* v. *The N. Y. & H. R. R. Co.*, 14 N. Y. 310, this language was used by Judge Wright: "Since the jury must be satisfied by proof of the probability of actual loss resulting to the plaintiff from the death of the minor, the condition of the parents, the occupation of the father, etc., are admissible in evidence in this class of cases, when not in others, under the statute, to enable the jury to determine the actual loss which will, in all probability, result from the death of a child." (Citing *Ewen* v. *Chicago & N. W. R. Co.*, 38 Wis. 613; *Barley* v. *Chicago & Alton R. R.*, 4 Biss. 430; *Chicago* v. *Powers*, 42 Ill. 169.)

" But the damages must be limited to the minority of the child. It is the pecuniary value of the services of the boy during his minority that can be recovered." (Citing *Caldwell* v. *Brown*, 53 Pa. St. 453; *State of Maryland* v. *B. & O. R. R. Co.*, 24 Md. 84; *Penn. R. R. Co.* v. *Kelly*, 31 Pa. St. 372; *Penn. R. R. Co.* v. *Zebe*, 33 Pa. St. 318; *Telfer, Adm'r*, v. *N. R. R. Co.*, 30 N. J. L. 188.)

" The expense of providing for the child, had he lived, should be estimated and deducted from the estimated earnings of the child. Says Van Dyke, J., in the case last above cited: " The action is the creation of the statute." In the same action the Court says the common law gives no action to a father sustaining such an injury. It is given by the statute. The language of the Act upon the subject of the damages is : " The jury may give such damages as they shall deem fair and just with reference to the pecuniary injury resulting to the wife and next of kin of such deceased person." "It is liable to great abuse, and the Court should see that every verdict which is rendered contrary to it should be set aside. It is simply an action to recover, in dollars and cents, a compensation for the loss and damages which have

actually been sustained." In this case there were two boys, one thirteen and one seventeen years of age, who were driving in a wagon; got on a crossing, were struck by a passing locomotive, and instantly killed.

"As the father of his children, the plaintiff was entitled to their services until they should arrive at the age of twenty-one years; and what those services might reasonably have been expected to be worth, he was entitled to recover, and nothing more, unless it be expenses growing out of the injuries, subject to the burdens and incumbrances which that relationship imposed upon him. Where, however, as in Iowa, the statute provides that the action shall be in favor of the 'estate of the deceased,' it is held that the damages are not limited by the minority of the child."

In *Potter, Adm. etc., v. The Chicago & N. W. R. R. Co.,* 21 Wis. 377, it is said: " The weight of authority is that the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life beyond the minority. But this does not seem to be correct. As was said in *Bannon* v. *B. & O. R. R. Co.,* 24 Md. 117: ' the chances of survivorship, his ability and willingness to support others, are matters too vague to enter into an estimate of damages merely compensatory.'"

In *Telfer* v. *The Northern R. R. Co.,* the Court further says: " It is insisted also that the damages in these cases are excessive." [I will remark here that these actions were brought, as probably they strictly should have been brought, separately for each one, and were, by stipulation, consolidated and tried together. In this case, by agreement, the cases of all the children were tried in one action, and we make no point, exception, or objection to what would otherwise be an improper joinder of several causes of action.] " In the case of David, they are assessed at nine hundred and thirty-six dollars; and in the case of William at one thousand and fifty-six dollars. In the view which I have taken of the cases, it is not necessary to examine this part of them; but the question presented is one of importance, and deserves the consideration of the Court, either now or at some other time. The jury seem to have been left pretty much to their own conclusions in the matter, as there was but little if any evidence to throw light on the subject beyond

the fact of the relationship between the father and his children; and it may be doubted if they could have reached the conclusions which they did, if they had been governed by correct legal principles.

"The action is the creation of the statute; and it is needless to say that it must conform strictly to it. It is liable to great abuse; and the Court should see that every verdict which is rendered contrary to it, should be set aside. It is simply an action to recover in dollars and cents, a compensation for the loss and damages which have actually been sustained. As the father of his children, the plaintiff was entitled to their services until they should arrive at the age of twenty-one years; and what those services might reasonably have been expected to be worth, he was entitled to recover, and nothing more, unless it be expenses growing out of the injuries, subject to the burdens and incumbrances which that relationship imposed upon him. Nothing can be allowed for the mental anguish which, as a parent, he is supposed to have suffered. Nothing for the satisfaction and comfort of having his sons—nothing for the loss of their society and associations.

"The damages in the case of William are fixed at one thousand and fifty-six dollars. He was over thirteen years of age, and had something over seven years to serve his father. There is an allowance, then, of about one hundred and fifty dollars per year on an average.. This is about what the services of a full-grown man would be worth in the business in which the plaintiff was engaged, when boarded, provided he should work faithfully the whole of that time. If this is the principle upon which the jury proceeded, they were unquestionably wrong; for as the plaintiff was bound not only to feed but to properly clothe and educate his son, and to take care of him if sick, pay his physician's bills, etc., it may well be doubted whether his services would have been worth any more than his board, clothing, education, and other incidentals, previous to his arriving at the age of eighteen years.

"At all events, these things should have been taken into consideration by the jury, and proper deductions made on account of them, as well as for the days of idleness, of absence, and of pleasure incident to such relationship and likely to inter-

vene.  The jury seem, too, to have gone on the supposition
that William would remain in sound health, and serve faith-
fully during every day of the time; whereas, they were bound
to consider the probability, that through accidents, sickness,
and the like, he might be unable, possibly for a considerable
portion of the time, to perform service at all, when he would
be an expense rather than an advantage.  Then, too, they
seem to have taken it for granted that he was certainly going
to live through the whole period, and his life, during the whole
of that time, the defendants are made to insure; whereas, it
was possible he might die the next day, when his services, of
course, would have ceased.  We may be quite willing to bind
ourselves to pay a man one thousand and fifty dollars for
seven years' service, if we can certainly have that service se-
cured to us, when we would not be willing to pay half that
sum if we are to take all the risk of his sickness, accident,
and death in the mean time.  These things, too, should have
been taken into consideration and allowed for; and if they
had been, all of them, it seems difficult to see how the jury
could properly have calculated the damages at one thousand
and fifty-six dollars.  The same principles and rules apply, of
course, to the case of David; and if this were the only rea-
son on which we are asked to set the verdicts aside, I should
feel constrained to yield to it, believing, as I do, that the jury
must have proceeded upon erroneous principles in this respect
in reaching their conclusions."

Judge Elmer, concurring, says: "I am also of opinion that
the damages were excessive.  The jury had no legal right to
give more than the actual pecuniary injury to the plaintiff,
the father and next of kin of the persons killed, resulting
from their death.  In this case there was little or no difficulty
in arriving at a correct result.  The boys were of the ages of
thirteen and fifteen years, so that the father was entitled to
fourteen years' service from them before they became of full
age.  The true rule for measuring his injury was the cost of
procuring equivalent help from others, whose clothing and
other necessaries should be furnished by him; to which might
perhaps be added reasonable funeral charges, beyond what
was expressly contributed for that purpose.  Upon the most
liberal computation, these expenses could not have amounted,

to anything like the sum awarded by the jury. Verdict set aside." (See *Karr* v. *Parks*, 44 Cal. 46 ; *Sykes* v. *Lawlor*, 49 id. 236 ; *Durkee* v. *C. P. R. R. Co.*, 56 id. 388 ; *Beeson* v. *G. M. G. M. Co.*, 57 id. 20.)

In the *Durkee Case*, Chief Justice Morrison, in passing upon the questions involved, cites *O. & M. R. Co.* v. *Tindall*, which was an action to recover damages for the loss of Daniel Tendall, a minor, killed by a locomotive engine of the company, as follows : " The third question relates to damages. The Court instructed the jury that, in estimating damages, they might take into consideration the actual pecuniary loss to the plaintiff, occasioned by the death of the son, and the services; and also, such other circumstances as have injuriously afflicted the plaintiff in person, in peace of mind, and in happiness." The Court says this instruction was erroneous, citing *Quin* v. *Moore*, 15 N. Y. 432, where the statute is similar to that of California. Indeed, all these statutes are founded upon the Act of Lord Campbell. " The statute of New York," says the Court, " under which the foregoing decision was made, authorized the jury to give such damages as they deem fair and just, with reference to the pecuniary injury resulting from such death to the wife and next of kin to the deceased person."

The children of the plaintiff were aged as follows: Christine, a girl, aged sixteen years; Katie, a girl, aged fourteen years; John, a boy, aged ten years; Frank, a boy, aged eight years; Lillian, a girl, aged five years. It is impossible to say what, if any, basis was assumed by the jury in arriving at a verdict of ten thousand eight hundred dollars as the total damages of the plaintiff.

If they equally apportioned the damages among the children, they allowed two thousand dollars for each child, as the value of the prospective services of each, without reference to disparity of age or difference in sex. If they found the years of service to which each was bound to the parent, the result would be as follows: Christine, two years, two thousand dollars; Katie, four years, two thousand dollars; John, eleven years, two thousand dollars; Frank, thirteen years, two thousand dollars; Lillian, thirteen years, two thousand dollars; total, forty-three years, ten thousand dollars. Dividing ten

thousand dollars by forty-three years, we have again the yearly value of all their services, equal to, say, two hundred and thirty-two dollars and fifty cents per annum, without any deductions whatever for board, clothing, education, illness, or any incidental expense whatever, or any regard to the near emancipation of some of the children and the infancy of others.

If the cases cited state the law, the verdict of the jury was excessive and contrary to law. It is evident there was no calculation about the matter. The jury made the damages as large as they dared. But in view of the intimation of the Court that a verdict based upon sympathy, and not reasonable calculation of values, would be set aside, they may have been somewhat restrained. However this may have been, the verdict was evidently not in accordance with the law.

*W. W. Foote* and *A. A. Moore*, for Respondent.

The rule in cases of this character, as we understand it, is perfectly plain, and is supported by an unbroken current of authority. "There being some proof of negligence, the Supreme Court will not review the verdict." (*Algier* v. *Steamer Maria*, 14 Cal. 168.) "In an action for damages for injury caused by negligence, a nonsuit on the ground of contributory negligence should only be granted when, giving the plaintiff the benefit of all controverted questions, it is apparent to the Court that a verdict in his favor must necessarily be set aside." (*Schierhold* v. *N. B. & M. R. R. Co.*, 40 id. 447.) And in the case of *Siegel* v. *Eisen*, 41 id. 109, the same doctrine is affirmed. "The question whether the collision by which the injury was caused could have been avoided by proper care, is a question of fact for the jury." This was the precise question at issue in the case at bar, and the verdict of the jury decided it adversely to the defendant.

In the case of *Fernandes* v. *The Sacramento City Railway Co.*, 52 Cal. 52, our Court uses the language of another Court with approval. "Ordinarily, however, it is to be settled as a question of fact in each case as it arises, upon a consideration of all the circumstances in connection with the ordinary conduct and motives of men, applying as the measure of ordinary care the rule that it must be such care as men of common

prudence usually exercise in positions of like exposure and danger. When the circumstances under which the plaintiff acts are complicated, and the general knowledge and experience of men do not at once condemn his conduct as careless, it is plainly to be submitted to the jury. What is ordinary care in such cases, even though the facts are undisputed, is peculiarly a question of fact to be determined by the jury under proper instructions. It is the judgment and experience of the jury, and not of the Judge, which is to be appealed to." In the same case our Supreme Court continues thus: "We think these cases, and many others of like import which might be cited, state the rule correctly; and the conclusion to be drawn from them is, that if it clearly appears from the undisputed facts, judged of in the light of that common knowledge and experience of which Courts are bound to take notice, that a party has not exercised 'such care as men of common prudence usually exercise in positions of like exposure and danger,' negligence in such a case is a question of law to be decided by the Court. In all other cases the question must be submitted to the jury under proper instructions.' "

In support of these views we refer also to the late work of Mr. Field on the law of damages, who, at page 519, states the rule to be that "to justify a nonsuit on the ground of contributory negligence, the evidence against the plaintiff should be so clear as to leave no room to doubt; and all material facts must be conceded or established beyond controversy." The rule we have announced is also supported by the following recent adjudications: *Johnson* v. *Bruner*, 61 Pa. St. 58; *Quirk* v. *Holt*, 99 Mass. 164; *B. C. P. R. Co.* v. *Wilkinson*, 30 Md. 226; *Barton* v. *St. L. & I. M. R. R. Co.*, 52 Mo. 253.

Later cases of our own Court announce the same doctrine. (*Durkee* v. *C. P. R. R. Co.*, 56 Cal. 388; *Jamison* v. *S. J. & S. C. R. R. Co.*, 55 id. 593.) And in all the other States the doctrine is the same—each case is to be governed by its own particular facts. As has been well said by our own jurists: "Negligence is never absolute or intrinsic, but is always relative to some circumstances of time, place, or person." This being the law, it is only necessary to examine into the facts

of this case, to see that the motion for a nonsuit was properly denied.

The first witness called for the plaintiff, H. F. Nehrbas, the father of the children, testified in a clear and distinct manner as to the facts preceding the accident. His children, the eldest sixteen years old, left home in the morning, driving a gentle horse, for the laudable purpose of attending a May-day picnic. They were acquainted with the road, and counsel for the defendant claims that this circumstance imposed upon them an additional degree of care. This is not the law. "The mere fact that a traveler is familiar with the road, and knows of the existence of defects therein, will not impose upon him the obligation to use more than ordinary care in driving it. Such knowledge is merely a circumstance. * * * * (Shear. and Red. on Neg., 492, and cases cited in note.) Besides, these children were infants, and not legally held to as high a degree of care as grown people. (*Schierhold Case.*)

Counsel for appellant also claims, in his specifications of errors, that there were other acts done or omitted by these children, which in law amounted to contributory negligence. An examination of the transcript will disclose no single act of the kind, and, as we understand the law, the fact of contributory negligence is a defense to be proved by the defendant, and its absence need neither be pleaded nor proved in the first instance by the plaintiff. (*Robinson* v. *Western P. R. R. Co.*, 48 Cal. 409; *McQuilken* v. *C. P. R. R.*, 50 id. 7.)

On the other hand, negligence is not to be presumed against the railroad company, but must be proven. We think the admitted and proved facts in this case show negligence of the grossest kind. In the first place, the railroad company, in constructing its road over and across the ancient and public highway, under authority of the license conferred by Section 5 of the Act of the Legislature conferring such rights, did not comply with the provisions of said Act, and it did not comply with the provisions of Section 19 of said Act. (Statutes 1861, p. 615, §§ 5, 19.) They did not restore the highway to as safe a condition as it was before, and this was a fact from which the jury were at liberty to infer negligence. "Where the track of a railroad crosses a turnpike, care and caution which the company and parties passing upon

the highway should use are mutual. Where the view is obstructed, so that parties crossing the railroad can not see an approaching train, the exercise of greater care and caution is required by both sides. Those in charge of the train should approach the crossing at a less rate of speed, and use increased diligence to give warning of its approach; and neglect in these particulars, is sufficient to fix a liability for an attending injury upon the company." (*Louisville C. & L. R. R. Co.* v. *Goetz's Adm'x*, C. of Appeals, Ky., 12 Rep. 616.)

The evidence showed conclusively, and it was not contradicted, that it was an act of gross negligence for the railroad company to have planted double rows of trees on both sides of its right of way, so that the view of both employees of the road and of travelers approaching the crossing should be obstructed. "Both parties are, however, equally bound to use ordinary care. For this purpose, it is the duty of the engineer to keep watch for travelers, to give signals, etc., and also to approach a crossing which he knows to be continually thronged with travelers, and unprotected by the company, at such a rate of speed as will enable him to check the train if necessary." (See also, *Indianapolis & S. L. R. R. Co.* v. *Smith*, 78 Ill. 112; *Mackay* v. *N. Y. Cent. R. R. Co.*, 35 N. Y. 75.)

Mr. Justice McKinstry, speaking for the Court, in the *Robinson Case* before cited, uses this significant language, with reference to the conduct of persons in the immediate presence of dangers: "We attach little consequence to her conduct after the train began to move. Startled and alarmed, as she doubtless was, by the immediate peril of her position, it would be asking more than should be required of an ordinarily prudent and reasonable person to demand that she should exercise the soundest discretion in her efforts to escape." So was it with these little children. First seeing or hearing the train at the moment when they were within a few feet of the track, their view obstructed by the bridge and trees, and the sound of the approaching train deadened by the same causes, it is idle to claim that they did not attempt to save themselves from a peril to prevent which would have been impossible. To hold such a doctrine, would be in effect to say that a traveler who was injured crossing a railway upon a public highway could

never recover damages. The case of *Richardson* v. *N. Y. Central R. R.*, 45 N. Y. 846, and the case of *Ernst* v. *Hudson River R. R. Co.*, 35 id. 9, are cases to which we invite the particular attention of the Court and opposing counsel.

Appellant claims that the verdict is excessive and contrary to the law as given to the jury by the Court. In this State, under Sections 376 and 377, it is provided that "in every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just." A verdict should not be set aside unless outrageously excessive.

Field, in his work on damages, thus clearly states the rule: "The power of the Court to set aside verdicts, and grant new trials, should be exercised only where it is apparent from the amount of the verdict or otherwise, that the jury were influenced by passion, prejudice, corruption, or an evident mistake of the law or the facts, or that there was a palpable error in computation." This doctrine is well expressed by Justice Wilde, who remarks: "In all cases where there is no rule of law regulating the assessment of damages, and the amount does not depend upon computation, the judgment of the jury, and not the opinion of the Court, is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken views of the merits of the case." Under the instructions in this case, much was left to the unbiased discretion of the jury, and certainly no Court can say, upon the principle of compensatory damages merely, that the verdict was outrageous or at all excessive. The case of *Myers* v. *San Francisco*, 42 Cal. 215, decided under the statutes of this State, as they stood in 1862, is an instructive case upon this point.

ROSS, J.:

Except in one aspect of the case we need not allude to the pathetic side of the accident which in an instant brought death to five children, the oldest of whom was but sixteen and the youngest but five years of age. The action is by the father against the Railroad Company for damages for the loss of his children. If there was no negligence on the part of

the defendant, of course the plaintiff can not recover. And even if there was great negligence on its part, yet if the accident was brought about in part by a want of ordinary care on the part of the deceased, a like result must follow.

The first inquiry, therefore, is: Is there any evidence going to show negligence on the part of the defendant?

The accident occurred in the afternoon of a lovely day in May. The children killed were returning home from a Mayday picnic, in a light wagon drawn by one gentle horse. The oldest—a girl of sixteen—was driving. She was acquainted with the highway over which she was passing and with the point at which it was crossed by the railroad track. Several persons in vehicles preceded her on the highway, and had crossed the railroad, the nearest one—Meeks—being some 400 feet in advance; and she was followed by a boy thirteen years old, at a considerable distance in the rear. On the railroad, about 335 feet from the point of crossing, was a covered bridge. On either side of the railroad, between the bridge and its intersection with the highway, were a number of eucalyptus trees planted by the defendant, and which had attained such size as, according to some of the testimony in the case, prevented—in connection with some neighboring orchards— an approaching train from being seen by those traveling the highway, until the traveler should reach a point very close to the railroad track. There is also evidence going to show that at the time of the accident the train was slightly behind time and was running at the rate of from 33 to 35 miles per hour, whereas the rate at which the trains usually ran at that point was from 25 to 30 miles an hour. Further, there was some evidence tending to show that the bell was not rung nor the whistle blown. In the recent case of *Kellogg* v. *N. Y. C. & Hudson R. R. R. Co.*, reported in 79 N. Y. 72, the only negligence on the part of the defendant submitted to the jury, was its omission to ring the bell at the crossing, and the Court of Appeals held in that case, that while there was a great preponderance of evidence that the bell was rung, the Court could not say that there was not some conflict in the evidence upon that question proper for submission to the jury. " There was some evidence," said the Court, " tending to show the bell

was not rung, and we can not say as matter of law that the jury was bound to disregard it."

In the case before us, the engineer and fireman of the locomotive were on the stand as witnesses, and neither of them was asked as to whether the bell was rung or the whistle blown. The engineer testified that when he first saw the children they were within about ten feet of the railroad track and the train was between the bridge and the crossing; that he at once put on the air-brake, but to stop the train was out of the question. The boy spoken of, who appears, from his testimony as reported in the record, to be a bright lad, testified that from the position he occupied on the highway he heard the rumble of the train as it passed through the covered bridge, but that he did not hear the bell nor the whistle; that he was in a position where he could have heard them, and that he was in the habit of hearing them at that point, having occasion frequently to pass there; while, on the other hand, the witness Meeks testified that from his position he heard both the bell and the whistle.

It was for the jury to pass upon the effect of this testimony. Besides, the increased speed, under the circumstances appearing, certainly tended to show negligence on the part of the defendant.

It was held, in the case of the *Continental Improvement Company* v. *Stead*, 95 U. S. 163, that "where the view is obstructed so that parties crossing the railroad could not see an approaching train, the exercise of greater care and caution was required on both sides. Those in charge of the train should approach the crossing at a less rate of speed, and use increased diligence to give warning of its approach." And in the case of the *Louisville C. and L. Railroad Company* v. *Goetz's Administratrix*, decided by the Court of Appeals of Kentucky, September 13, 1881, the crossing of a turnpike by the railroad "on a descending grade, running thirty miles or more an hour, with no other signal or warning than a whistle within seventy yards of the crossing, to warn those traveling on the turnpike of its approach," was of itself held culpable negligence. (12 Reporter, 618.)

Clearly, we would not be justified in holding that the testimony in the case now here was not such as entitled the

plaintiff to have it submitted to the jury, or that, being so submitted, it is not sufficient to support the verdict of the jury finding negligence on the part of the defendant.

Next, was there such contributory negligence on the part of the deceased as precludes a recovery by the plaintiff?

On this branch of the case the law is: "If it clearly appears from the undisputed facts, judged of in the light of that common knowledge and experience of which Courts are bound to take notice, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure and danger, the question of negligence is one of law, to be decided by the Court. In all other cases the question must be submitted to the jury under proper instructions." (*Fernandes* v. *Sacramento City Railway Co.*, 52 Cal. 52, and the numerous authorities there cited.)

This being the law, we are of opinion that the present case was properly submitted to the jury, and that there is no valid reason for disturbing their finding that there was no contributory negligence on the part of the deceased.

It has already been decided here that contributory negligence on the part of the injured party, is a matter of defense, to be proved affirmatively by the defendant, unless it can be inferred from circumstances proved by the plaintiff. (*Robinson* v. *W. P. R. R. Co.*, 48 Cal. 426, and authorities there cited.)

A part of the circumstances in the present case have already been detailed. It has been seen that the children were preceded a considerable distance on the highway by the witness Meeks. Some distance ahead of him was "Smalley's stage," in which were a number of people. As Meeks approached the railroad track he noticed that the passengers in the stage were waving their hats and handkerchiefs at him, but he did not understand why. As he crossed the track he looked down it and saw the train at a distance, as he supposes, of from 1,500 to 2,000 feet beyond the bridge. Meeks, who was driving a good team, at a good road gait, passed the railroad track, and, observing that the passengers in the stage continued to wave their hats and handkerchiefs, stopped and looked back to see if there was not some one behind him to whom they were waving, and saw the wagon, in which were the children, coming up the grade that leads up to the track

at the crossing. Meeks further testified that when the children got close to the track they seemed to have discovered the train and to urge the horse on, and that the horse, as the train approached, swerved to the left, and a moment after he saw the horse in the air.

It will be borne in mind that the testimony went to show that because of intervening trees, those traveling along the highway in the direction the children were going, could not see an approaching train until they had reached a point very near the railroad track. A part of the trees that thus obscured the view, were planted and permitted to grow by the defendant along its track, and within its right of way. At the time of the accident, according to the testimony of Meeks, a wind was blowing, which caused the trees to rustle; and this, it may be, prevented the children—who were much nearer the railroad track and consequently much nearer the trees, than were Meeks or the boy—from hearing the rumbling of the train, while both Meeks and the boy did hear it, according to their testimony. It is not to be presumed that the girl who was driving, recklessly or carelessly, imperiled her own life and the lives of her younger brothers and sisters.

And from the testimony of the engineer of the locomotive, as well as from that of Meeks and the boy, it is quite certain that the children must have been dangerously near the track before they were made aware of the approach of the train. The engineer, according to his testimony, was in the cab and on the lookout. When he first saw them they were within about ten feet of the track; and as he saw the horse before he saw the children, it is not probable if possible that they could have seen the train until they reached a point dangerous in the extreme. The engineer further testified that the horse was on a trot when he first saw him, stopped when within about five feet of the track, turned his head to the driver's left, and then started on again, when the crash came. As the train was running at a rapid rate and was between the bridge and the crossing when the horse was first discovered, of course all of this could have taken at most but a few seconds of time. It is by no means clear that the children could have escaped by the exercise of the utmost coolness and discretion. But in such cases, such a degree of care is never required of those

traveling a highway. Certainly these children were not bound to exercise more care than a prudent man approaching such a place would ordinarily exercise for his protection (Authorities *supra*, and *Schierhold* v. *N. B. & M. R. R. Co.*, 40 Cal. 447; *Richardson* v. *N. Y. Central R. R.*, 45 N. Y. 846; *Ernst* v. *Hudson R. R. R. Co.*, 35 N. Y. 9.) There is no proof that they were heedless, and under all the circumstances surrounding the accident, we think it was for the jury to determine whether they exercised that care which the law required of them.

There only remains to be considered whether the damages awarded the plaintiff by the jury—ten thousand eight hundred dollars—are excessive.

It is not claimed by the learned counsel for the appellant that this is so, unless the law be, as claimed by him, that the jury was limited to the actual pecuniary injury sustained by the plaintiff by reason of the loss of the services of his children. Such is not the law in this State. (Code of Civil Procedure, §§ 376 and 377; *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 20; *Cook* v. *Clay-street Hill Co.*, 9 Pac. C. L. J. 605.)

In view of the rule of damages prevailing here, we can not be reasonably expected to hold that for such a loss as the plaintiff in this case sustained, the amount awarded him by the jury was excessive.

Judgment affirmed.

McKinstry and Sharpstein, JJ., and Morrison, C. J. concurred.