and others, for partition. An order was entered that the cause be referred to William H. Willis, Esq., to take testimony, and report to the court with his opinion as to the rights of the several persons interested in having liens upon or claiming any part of the proceeds of the sale of the premises which had been deposited with the city chamber. From an order confirming the report of the referee's award to Messrs. Bliss & Schley of $500 for their services as the attorneys of plaintiff they appeal. Affirmed.

For former reports, see 20 N. Y. Supp. 906, and 21 N. Y. Supp. 13.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Bliss & Schley, in pro. per.

Theodore H. Silkman, for respondents.

PER CURIAM. The reference in this case was not to hear and determine, but to take the evidence, and report it to the court, with the opinion of the referee thereon. Exceptions to such a report are unavailing, as exceptions can be taken only to the determination of some court or officer having power to decide the question the decision of which is challenged. Under this reference it was the duty of the court to determine the facts and the law, and, if the determination was unsatisfactory to either party, exceptions should have been filed to its decision. None having been filed and served, the record presents no question for review. It will be seen from this conclusion that we do not agree with the respondent in his contention that it was necessary to file exceptions to the report of the referee, and that the failure to so file them would, after eight days, result in the confirmation of the report. As correctly stated in Attorney General v. Continental Life Ins. Co., 64 How. Pr. 93:

"The thirtieth rule of the court, as to the necessity of filing exceptions to a referee's report, has no application to a reference of this nature and character. It is only to a reference which empowers a referee to decide questions between parties that the rule is applicable, and cannot foreclose the court from passing upon matters which such court only has power to determine."

The motion to confirm the report could be resisted at special term upon any grounds appearing in the record, without exceptions having been filed to the report; but after the questions of fact and of law had been finally determined by the special term exceptions should have been filed, in order to successfully challenge the decision. Our conclusion is that the order should be affirmed, with $10 costs and disbursements.

---

## PERCEY v. FITCHBURG R. CO.

(Supreme Court, General Term, Third Department. February 13, 1894.)

NEGLIGENCE—EVIDENCE—NONSUIT.

In an action against a railroad company for injuries causing the death of plaintiff's intestate, it appeared that intestate was the mail carrier from defendant's station, which was situated on defendant's land be-

tween its tracks, and that while he was leaving the station after receiving the mail bag his horse apparently became unmanageable, and started to run, and as he crossed the track he was struck by an express train, which passed the station at a high rate of speed. As he approached the crossing a bystander shouted to him that the train was coming, but it did not appear that he heard the warning, or that he heard the whistle of the locomotive as it approached the station. *Held*, that a nonsuit was properly granted, on the ground that there was no evidence either that defendant was negligent or that plaintiff was free from contributory negligence. Mayham, P. J., dissenting.

Appeal from circuit court, Rensselaer county.

Action by Ruth Percey, as administratrix of Joseph Percey, deceased, against the Fitchburg Railroad Company, to recover damages for the alleged negligence of defendant in causing the death of plaintiff's intestate. The complaint was dismissed, and plaintiff appeals. Affirmed.

Argued before MAYHAM, P. J., and HERRICK and PUTNAM, JJ.

George B. Wellington, for appellant.
T. F. Hamilton, for respondent.

PER CURIAM.    Judgment affirmed, with costs.

MAYHAM, P. J. (dissenting).    Appeal by the plaintiff from a judgment entered upon the order of the trial judge dismissing the plaintiff's complaint and nonsuiting the plaintiff upon the merits. The action was prosecuted by the plaintiff to recover for the alleged negligence of the defendant in running its railroad train, by reason of which plaintiff's intestate was killed. The grounds of the nonsuit, as stated by the trial judge, were that there was no evidence from which the jury could properly find that the plaintiff's intestate was free from contributory negligence, and no evidence upon which the jury could find that the defendant was guilty of any negligence. The evidence discloses that Hoosick station on the defendant's railroad is a short distance south of the highway leading to Hoosick village, which is a hamlet lying mostly on the easterly side of the railroad. This highway passes through the village, and constituted one of its principal streets. The station is located between the tracks, and the only way of ingress and egress to and from the station from the highway was over the defendant's land, a distance of about 364 feet. The plaintiff's intestate was the mail carrier from the station to Hoosick post office, and also carried baggage from the station to the village, using as his means of conveyance a single horse and open buggy, and was accustomed to visit this station on such business five or six times each day. After driving from the highway to the station between the defendant's tracks, there was no way of getting out except by turning around at the station and driving back over the same route. On the day of the injury the plaintiff's intestate drove into the station to receive the mail from the east-bound mail train, which was late. After the mail train had come and gone, he turned his wagon,

and loaded in his mail and baggage. A light engine followed the mail train, moving but slowly, and making no unusual noise; and it appears from the evidence that about the time the light engine passed plaintiff's intestate got in his wagon, and started in the direction of the highway, when an express train on defendant's west-bound track, running at a high rate of speed, passed the station. At that time deceased's horse seemed to become unmanageable, and started to run, the deceased apparently trying in vain to hold him. A bystander, seeing his danger, shouted a warning to deceased, but it does not appear whether or not he heard either the train or warning; and as his horse turned to cross the railroad track the wagon was struck by the train, and he was precipitated upon the ground and killed. It appeared that the whistle on the locomotive of the express train was sounded at the whistling post on approaching the station, but, as appears by some of the testimony, not more than two seconds before the collision with deceased's wagon. The land between the defendant's railroad tracks over which the station was reached in going from the highway belonged to the defendant, and the distance between the two tracks was about 63 feet. In passing over or standing upon this open space or driveway between the station and the highway the station and a coal house adjoining it obstructed the view along the track southerly, but by standing near either track that obstruction was avoided, and the track southerly could be seen for a distance of two miles to the Petersburg station. The contention of the plaintiff and appellant is that the defendant, by opening this cul de sac from the highway to the station, and thus inviting the public to approach the station over it, and furnishing no other way of ingress and egress, was negligently furnishing a trap into which the plaintiff's intestate was compelled to enter to procure the mail he was required to take from the trains to the post office, and the defendant was on this occasion guilty of negligence in running its trains off of its usual time, at a rapid rate, without sufficient warning to the deceased of its approach to enable him to avoid a collision; and that these facts should have been submitted to the jury, and that it was error for the trial judge to take that question from them. It is also insisted by the appellant that the evidence would justify the jury in finding that the plaintiff's intestate was free from contributory negligence, and that that question should also have been submitted to them. On the part of the respondent it is insisted that, as the land between the defendant's railroad tracks belonged to it, and the intestate was a mere licensee, who was familiar with the location and the dangers incident to the same, he was there at his peril, and the defendant owed him no duty, except to do him no intentional harm.

In Hulbert v. Railroad Co., 40 N. Y. 154, the court held that the following language, used by the trial judge in charging the jury, was not error:

"That any place where the cars are accustomed to stop passengers have a right to suppose that adjacent to the cars the ground admits of their getting

safely out and in, and I do not think that it is right to let any other rule prevail. Within the limits in which persons necessarily and ordinarily go to and from the trains it is necessary that the company keep the ground safe."

In Hoffman v. Railroad Co., 75 N. Y. 605, the plaintiff's intestate passed diagonally over the defendant's railroad tracks to the highway, and in doing so fell into a cattle guard, and was then struck by defendant's train and killed. Upon this evidence the plaintiff was nonsuited at the trial. The nonsuit was, on appeal to the court of appeals, held error; that it was defendant's duty to furnish a safe and convenient passage from its depot to the highway (citing Hulbert v. Railroad Co., supra); and there was ground for a finding that, in consequence of its neglect to perform that duty, passengers would need to go along the tracks to pass conveniently from the depot to the highway, and if they were then exposed to injury it was because of defendant's neglect.

In Weber v. Railroad Co., 58 N. Y. 451, it was held that it was not enough in all cases to absolve a railroad company from the charge of negligence in running its trains and using its tracks at a crossing that the statutory signals are given, and that circumstances may require other precautions to be taken in respect to the moving of their trains and the use of their road. In that case the court uses this language:

"Juries may and must say whether a railroad company sought to be charged for alleged negligence has, in the operations of its trains and the use of its road tracks and the conduct of its business, used that degree of care and prudence which the circumstances and its obligation to others require, but beyond this they cannot go."

While it is true that a jury would have no power or authority to prescribe the kind of signals to be used by a railroad, or the propriety or necessity of a flagman at a given point, or the manner of the location of its tracks or depot, they may, in a proper case, determine whether or not it has been guilty of negligence in the discharge of the duty which it owes to individuals or the public which has caused injury to individuals or the public, and in determining such questions may and must take into consideration the surrounding circumstances of each case submitted to them. Dyer v. Railway Co., 71 N. Y. 230; Cordell v. Railroad Co., 70 N. Y. 123; Houghkirk v. Canal Co., 92 N. Y. 219; Richardson v. Railroad Co., 45 N. Y. 846. In the case at bar the jury, if the case had been submitted to them, would have been authorized to consider the speed of the defendant's express train, the intestate's opportunity of seeing or hearing the same, the means of ingress and egress furnished by the defendants to and from its station, and from these and all the other surroundings bearing upon the questions determine whether or not the defendant was guilty of negligence by which the injury occurred. Salter v. Railroad Co., 88 N. Y. 50; Massoth v. Canal Co., 64 N. Y. 531. In considering the question as to what should be submitted to a jury in Martin v. Railroad Co., 27 Hun, 533, Learned, J., uses this language:

"The defendant insists that a railroad company has a right to run its trains on its own land at a high rate of speed. Perhaps that is so. But this cross-

ing was not its own land. It was land belonging to another, over which the public had a right to travel, and the railroad had also a right of passage. The defendant acknowledges that a high speed through a city or crowded locality is a circumstance bearing on the question of negligence when sufficient notice is given. But the defendant claims that it is only in a city or village that this rule applies; that in the country a high speed at a crossing is not to be considered on the question of negligence."

We do not think this is correct. The law is properly laid down in Improvement Co. v. Stead, 95 U. S. 161. Speaking of a crossing on the level, the court say:

"The train has the preference and right of way. But it is bound to give due warning of its approach. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on circumstances. It cannot be such if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be said to be a warning of the coming shot, but the velocity of the latter generally outstrips the warning. The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell. That is the principle which should be applied here. Where there is an excessive rate of speed, that may be considered by the jury, not perhaps as being in itself negligence, but as requiring at a crossing a warning which shall be available, and as tending to make the ordinary warning of no effect."

We are therefore of the opinion that within the authorities there was sufficient evidence in this case upon the question of the defendant's negligence to authorize the submission of that question to the jury. Nor do we think the case should have been taken from the jury on the ground that the plaintiff failed to show that her intestate was free from contributory negligence. It does not appear that the deceased was not properly at the station, or that he failed in attempting to do all he could to avoid the accident. It is true that his horse appeared to be running away, but it also appears that he attempted to restrain him. If the jury had found that the defendant, by its negligent act or omission, had caused the circumstance of peril, and created the emergency, it would not be released from responsibility because the plaintiff did not exercise the soundest discretion in his efforts to avert the consequences of its fault. Roll v. Railway Co., 15 Hun, 502, affirmed 80 N. Y. 647. "Where the evidence is conflicting, is capable of different interpretations, or the inferences to be drawn from it are doubtful, it is the province of the jury to pass upon it." Belton v. Baxter, 58 N. Y. 411. "In the cases of negligence where there are inferences to be drawn from the proof which are not certain and incontrovertible, it is not proper to direct a verdict or a nonsuit, but the question is for the jury. Thus, where it is necessary to determine what a man of ordinary prudence would be likely to do in the emergency proven, thus involving, as it generally does, more or less conjecture, it can only be settled by a jury." Bernhard v. Railroad Co., 1 Abb. Dec. 131. "To justify a nonsuit upon the ground of contributory negligence, the negligence must appear so clearly that no construction of the evidence or inference drawn from the facts would have warranted a contrary conclusion, and that a verdict of the jury the other way would have been set aside as against evidence." "In general, negligence is a mixed question of

law and fact, and is to be determined by a jury." Stackus v. Railroad Co., 79 N. Y. 466. I am therefore of the opinion that the questions in this case were proper for the determination of a jury, and that it was error to take them from the consideration of that tribunal. Judgment affirmed.